# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**May 1, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**QUAD GRAPHICS, INC.,**
**Employer Below, Petitioner**

**v.) No. 25-ICA-356**        (JCN: 2019014274)

**RODNEY HOTTLE,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Quad Graphics, Inc. ("Quad") appeals the August 6, 2025, order of the Workers' Compensation Board of Review ("Board").[1] Mr. Hottle did not respond. The issue on appeal is whether the Board erred in modifying the claim administrator's order, which denied authorization of a platelet rich plasma ("PRP") injection of the left glenohumeral joint and denied physical therapy to the cervical spine. The Board ordered Quad to authorize a PRP injection; however, it affirmed Quad's denial of physical therapy to the cervical spine.[2]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

Mr. Hottle submitted an Employees' and Physicians' Report of Occupational Injury or Disease dated January 7, 2019, reporting that he injured his arm on January 4, 2019. The physician's section was completed by Nandita Subedi, M.D., who indicated that Mr. Hottle injured his left arm as a direct result of an occupational injury. The claim administrator issued an order dated January 16, 2019, which held the claim compensable for left elbow and shoulder contusion.

---

[1] Quad is represented by Aimee M. Stern, Esq.

[2] The Board's order also affirmed the claim administrator's orders dated March 10, 2025, which denied the reopening of the claim for temporary total disability ("TTD") benefits, and dated March 24, 2025, which denied authorization for a left shoulder injection. These portions of the Board's order are not at issue in the instant appeal.

On February 16, 2019, Mr. Hottle underwent an MRI of the left shoulder revealing a subchondral cyst with overlying chondrosis at the posterior/inferior glenoid, findings of a tear accompanied by an adjacent posteroinferior paralabral cyst at the posterior-inferior labrum, mild to moderate rotator cuff tendinopathy within the supraspinatus and infraspinatus, and mild to moderate acromioclavicular ("AC") joint arthrosis.

Mr. Hottle underwent an arthroscopy of the left shoulder with biceps tenodesis, a labral repair of a SLAP lesion, subacromial decompression, and a distal clavicle resection on June 10, 2020, performed by Garth Wright, M.D. The pre-operative diagnoses were biceps tendinitis with superior labral tear, subacromial spur with rotator cuff impingement, and degenerative arthritis of acromioclavicular joint of the left shoulder. The post-operative diagnoses were partial tear of the biceps tendon near the labral anchor of the left shoulder; Buford lesion of anterior labrum of the left shoulder; type 2 superior labral lesion, SLAP; intact rotator cuff; subacromial spur with impingement of the rotator cuff; degenerative arthritis of the left acromioclavicular joint; and morbid obesity with a BMI of 47.

On April 5, 2021, Mr. Hottle underwent an MR arthrogram of the left shoulder, performed by John Carroll, M.D. Mr. Hottle reported left arm numbness, decreased range of motion ("ROM"), pain with popping/clicking of the joint, and neck stiffness/muscle spasms. It was reported that the study was limited by motion artifact. The arthrogram revealed high-grade partial to complete intra-articular long head biceps tendon tear, with retraction to the level of the proximal humeral metaphysis; probable prior high biceps tenodesis; moderate full and partial thickness chondral loss along the posterior inferior glenoid; posterior/inferior glenoid labral tear with a labral cyst; mild supraspinatus and infraspinatus tendinosis; mild chronic subscapularis tendinosis; and widening of the AC joint space which is most commonly postsurgical or posttraumatic.

The Board noted that Mr. Hottle submitted excerpts from a Decision of Administrative Law Judge ("ALJ"), which reversed the claim administrator's order dated October 20, 2021, denying arthroscopy of the left shoulder, and the ALJ authorized the treatment. The ALJ found Mark A. Rowley, M.D.'s opinion in his report dated November 10, 2021, that the surgery was related to non-compensable arthritis and age-related degeneration of the rotator cuff and glenoid labrum, to be unreliable.[3]

The Board took judicial notice of an ALJ Decision dated March 10, 2022. The ALJ authorized repeat arthroscopy of the left shoulder and reopened the claim for TTD benefits. The ALJ noted that the claim administrator's order dated October 20, 2021, indicated that the claim was compensable for a left shoulder contusion, left shoulder labral tear, and

---

[3] This Decision was submitted into the lower record but was not submitted to this Court. We note the Board's discussion of this evidence.

rotator cuff tendinopathy. The ALJ noted that the claim administrator's order dated April 3, 2020, granted authorization for left shoulder arthroscopy with SLAP repair vs. debridement and biceps tenodesis, possible subacromial decompression, and distal resection.

On September 5, 2023, Dr. Rowley performed an independent medical evaluation ("IME") of Mr. Hottle, who reported left shoulder pain and numbness of the left hand. Dr. Rowley diagnosed Mr. Hottle with post-traumatic arthritis of the left shoulder and related the diagnosis to the compensable injury. Dr. Rowley opined that the diagnosis of carpal tunnel syndrome was pre-existing and not related to the compensable claim. It was reported that Mr. Hottle's examination revealed no findings consistent with cubital tunnel. Dr. Rowley opined that Mr. Hottle had reached MMI from the post-traumatic arthritis of the left shoulder.

Mr. Hottle was seen by C. Gregory Kang, M.D., on June 12, 2024, for cervical, left shoulder, left hand, and left arm symptoms. Mr. Hottle reported that his symptoms returned despite an injection he received in the left shoulder. An examination of the left shoulder revealed tenderness, limited ROM, and a positive impingement sign. The assessment was left shoulder arthroscopy with chronic pain, history of labral tear and bicep tendon tear, and possible cervical radiculopathy. Mr. Hottle received a depo-medrol and lidocaine left shoulder injection.

On July 12, 2024, Dr. Rowley performed a second IME of Mr. Hottle, who reported left shoulder pain radiating into the neck. Dr. Rowley noted that an MRI of Mr. Hottle's cervical spine performed on April 2, 2016, revealed a prominent right foraminal protrusion at C6-C7, causing severe right neuroforaminal stenosis. Dr. Rowley explained that the decreased ROM of the left shoulder was causing mechanical strain on the cervical spine, aggravating the cervical radiculopathy. Dr. Rowley opined that Mr. Hottle's cervical spine condition had reached MMI.

Mr. Hottle had a telehealth visit with Dr. Wright on February 4, 2025. They discussed an MRI of the left shoulder, which revealed an intact rotator cuff but local susceptibility artifact within the glenoid probably related to the labral repair, attenuation of the labral substance, and moderate to advanced articular cartilage loss of the glenohumeral joint.[4] Dr. Wright recommended a PRP injection of the glenohumeral joint and physical therapy for the neck. The assessment was post-traumatic osteoarthritis of the left shoulder; a left glenoid labral tear; status post arthroscopy of the left shoulder; and morbid obesity.

---

[4] It's unclear from the medical records the date of the MRI being discussed at this visit, as the most recent MRI identified in the lower record is from 2021, four years prior to this visit.

Dr. Rowley authored a report dated February 25, 2025. After a review of additional medical records, Dr. Rowley opined that his finding of MMI for the left shoulder on September 5, 2023, and his finding of MMI for the cervical spine on July 12, 2024, did not warrant a change. Dr. Rowley opined that there was no medical necessity for additional treatment related to the compensable injury.

On August 6, 2025, the Board modified the claim administrator's February 10, 2025, order, which denied authorization of a PRP injection of the left glenohumeral joint, to reflect that the request for a PRP injection was granted; and affirmed the modified order. Quad now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

Quad argues that the evidence indicates that Mr. Hottle's compensable injury has reached MMI and further treatment is unlikely to result in a significant change in his condition. Quad notes that Mr. Hottle was found to have reached MMI by Dr. Rowley on September 5, 2023. Finally, Quad argues that Dr. Rowley re-affirmed his conclusion that Mr. Hottle's compensable injury had reached MMI and required no further treatment on February 25, 2025, after Dr. Wright recommended the PRP injection. We disagree.

The claim administrator must provide a claimant with medically related and reasonably necessary treatment for a compensable injury. *See* West Virginia Code § 23-4-3 (2005) and West Virginia Code of State Rules § 85-20 (2006).

4

Here, the Board found that:

> Regarding the PRP injection of the left glenohumeral joint, Dr. Wright requested the injection after a review of the left shoulder MRI which showed an intact rotator cuff but local susceptibility artifact within the glenoid probably related to the labral repair, attenuation of the labral substance, and moderate to advanced articular cartilage loss of the glenohumeral joint. Dr. Wright assessed the claimant with post-traumatic osteoarthritis, left shoulder; glenoid labral tear, left; and S/P arthroscopy of the left shoulder. The evidence also establishes that the claimant has continued left shoulder pain. The left shoulder labral tear and rotator cuff tendinopathy are compensable components of the claim and labral repair was authorized, and since the claimant continues to have left shoulder pain, it is determined that the PRP injection is medically related and reasonably required for the compensable injury.

Upon review, we conclude that the Board was not clearly wrong when it relied on the opinion of Dr. Wright, who is Mr. Hottle's treating physician. The evidence shows that Mr. Hottle's left shoulder symptoms are related to the compensable injury, and that even though Mr. Hottle is at MMI, left shoulder PRP injections will treat the compensable condition. As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in modifying the claim administrator's February 10, 2025, order to reflect that the request for a PRP injection is a medical treatment related to the compensable injury.

We find no merit in Quad's argument that Dr. Rowley's finding of MMI should affect Mr. Hottle's ability to continue to receive treatment for pain that is related to the compensable injury. Further, we note that Mr. Hottle is not precluded from seeking further treatment for pain and any other symptoms or complications found to be related to the compensable injury.

Accordingly, we affirm the Board's August 6, 2025, order.

Affirmed.

**ISSUED:** May 1, 2026

5

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White